**Robert E. JONES, Claimant–Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Respondent– Appellee.**

**No. 99–7031.**

United States Court of Appeals, Federal Circuit.

Oct. 25, 1999

Kenneth M. Carpenter, Carpenter Chartered, of Topeka, Kansas, argued for claimant-appellant.

Agnes M. Brown, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and David J. Barrans, Staff Attorney, Department of Veterans Affairs, of Washington, DC.

Before MICHEL, RADER, and GAJARSA, Circuit Judges.

Opinion for the court filed PER CURIAM. Additional views filed by Circuit Judge GAJARSA.

## DECISION

PER CURIAM.

Robert E. Jones appeals from the decision of the United States Court of Appeals for Veterans Claims,[1] *Jones v. West*, No. 97–11, 1998 WL 732856 (Vet.App. Oct. 9, 1998), affirming the decision of the Board of Veterans' Appeals ("Board") that denied as a matter of law the claim of clear and unmistakable error ("CUE"). For the reasons set forth below, we affirm the decision of the Court of Appeals for Veterans Claims.

## BACKGROUND

Mr. Jones served on active duty in the U.S. Army from August 1947 to June 1949 and in the U.S. Air Force from August 1949 to December 1959. In July 1962, he was hospitalized and diagnosed as having an "anxiety reaction with personality trait disturbance, passive aggressive personality, considered competent and mild in degree." In September 1962, the Department of Veterans Affairs (formerly, Veterans' Administration) ("VA") regional office ("RO") denied Mr. Jones' application for service connection of a psychiatric disorder on the basis that his disorder was a constitutional or developmental abnormality rather than a psychiatric disorder acquired in or aggravated by military service (the "1962 RO Decision"). Mr. Jones did not file a timely appeal to that decision as set forth in 38 U.S.C. § 7105(b)(1) and that decision became final after one year. *See* 38 U.S.C. § 7105(c) (1994); 38 C.F.R. § 20.1103 (1999).

Subsequent rating decisions that issued in February 1965, June 1985, and May 1989 denied requests to reopen Mr. Jones' claim for service connection of an acquired psychiatric disorder. Mr. Jones appealed the May 1989 decision to the Board, which remanded the claim for readjudication in light of recent Court of Appeals for Veter-

---

1. On March 1, 1999 the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to the enactment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 112 Stat. 3315, 3341 (1998). We refer throughout this opinion to the court by its new name although at the time of the proceedings and decisions here reviewed, it was not yet so named.

ans Claims decisions regarding the standard for reopening claims based on new and material evidence. In September 1991, the RO again denied Mr. Jones' request to reopen his claim.

When the denial was appealed to the Board, it conducted a *de novo* review of the evidence and material of record in the veteran's claims file and considered new and material evidence after securing an advisory medical opinion from an independent medical expert ("IME"). In a November 1993 decision, the Board granted Mr. Jones service connection for his acquired psychiatric disorder based on the new and material evidence, particularly the IME opinion, which provided that there was a link between Mr. Jones' in-service experience of killing a Korean boy and his subsequent psychiatric difficulties (the "1993 Board Decision").[2] The effective date for the service connection based on the new and material evidence was limited by statute and regulation to May 23, 1989, the date his application to reopen the claim was received by the RO. *See* 38 U.S.C. § 5110(a) (1994) (stating that effective date of award based on claim to reopen for new and material evidence "shall not be earlier than the date of receipt of application therefor"); 38 C.F.R. § 3.400(q)(1)(ii) (1999). Mr. Jones did not raise the issue of whether there was CUE in the 1962 RO Decision, and the Board never expressed in its opinion whether that rating decision was free of CUE.

In December 1994, Mr. Jones alleged that the 1962 Rating Decision was based on CUE because the same evidence that was available to the RO in 1962 was available to the Board in 1993 when it believed the record required an additional medical examination and granted him service con-

nection. Mr. Jones argued that there was CUE in the 1962 RO Decision because, among other reasons, there was a conflict in diagnosis in his condition in 1962, which triggered the VA's duty to assist the veteran by resolving the conflict. Mr. Jones contended that this breach of the duty to assist constituted CUE and that he was therefore entitled to an effective date of September 1962. In a December 20, 1994 rating decision, the RO determined that Mr. Jones had failed to file a valid CUE claim because his contentions were not limited to the factual record previously before the RO and were not based on the laws and regulations in existence in 1962.

In April 1995, Mr. Jones appealed to the Board. On September 10, 1996, the Board concluded that Mr. Jones' claim of CUE was insufficient as a matter of law (the "1996 Board Decision"). Based on its interpretation of 38 C.F.R. § 20.1104,[3] the Board reasoned that Mr. Jones was prohibited from collaterally attacking on the grounds of CUE the 1962 RO Decision because it had become subsumed into the 1993 Board Decision. The Board explained that, because the 1993 Board addressed on the merits the same determinations as did the 1962 RO Decision, this Board decision had "subsumed" the 1962 RO Decision. Mr. Jones could not challenge the subsumed 1962 RO Decision by bringing a CUE claim to an RO because that would effectively result in an RO reviewing a Board decision, which is prohibited because a lower tribunal cannot review a higher tribunal. The Board also explained that Mr. Jones could not bring a claim of CUE with respect to the 1993 Board Decision because CUE could be asserted only with respect to RO decisions and not Board decisions.[4] The Board fur-

---

2. At oral argument, Mr. Jones' representative stated that the 1993 Board Decision had been vacated. However, we find no such evidence in the record.

3. Section 20.1104 provides that: "[w]hen a determination of the agency of original jurisdiction is affirmed by the Board of Veterans'

Appeals, such determination is subsumed by the final appellate decision."

4. This decision was based on *Smith v. Brown,* 35 F.3d 1516, 1527 (Fed.Cir.1994) (holding that CUE review applies only to prior final decisions of agencies of original jurisdiction (ROs) and not to prior decisions of the

ther noted that breach of the duty to assist could not, as a matter of law, result in CUE and therefore denied his arguments regarding the breach of the duty to assist. This decision, however, did not examine the record before the RO in 1962 to determine the substance of Mr. Jones' claim, that is, whether there was CUE in the original RO decision.

Mr. Jones then appealed to the Court of Appeals for Veterans Claims the issue of whether the final, unappealed 1962 RO Decision could be subsumed by a subsequent Board decision reviewing that RO decision during a collateral attack and not on direct appeal. Mr. Jones also argued that the same evidence that was before the RO in 1962 was before the Board in 1993 when it granted service connection and therefore CUE must have been present in the 1962 RO Decision. The court held that the CUE claim was legally insufficient for two independent and alternate reasons. First, the court concluded that, based on the evidence, no CUE existed in the 1962 RO Decision. It also noted that the IME opinion, which was pivotal in the service connection granted in 1993, was not part of the record in 1962 and therefore could not be used to demonstrate CUE. Second, the court, relying on *Dittrich* and *Donovan,* held that the 1993 Board Decision subsumed the 1962 RO Decision and therefore an RO could not collaterally review that 1993 Board Decision. *See Dittrich v. West,* 11 Vet.App. 10 (1998), *aff'd,* 163 F.3d 1349 (Fed.Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1499, 143 L.Ed.2d 653 (1999) (holding that an RO could not collaterally review an earlier Board decision on the same operative facts with regard to the same legal issue); *Donovan v. Gober,* 10 Vet.App. 404, 407–08 (1997), *aff'd sub nom., Donovan v. West,* 158 F.3d 1377 (Fed.Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1255, 143 L.Ed.2d 351 (1999) (holding that a veteran could not request

an RO to collaterally review a prior RO decision because the Board had determined that no CUE tainted that initial decision and the RO cannot review a Board decision). The Court of Appeals for Veterans Claims therefore affirmed the Board's holding that Mr. Jones' claim of CUE was legally insufficient in a Memorandum Decision dated October 9, 1998, which became final when the court denied a motion for reconsideration. *See Jones v. West,* No. 97–0011 (Judgment Nov. 3, 1998).

On appeal to our court, the issue Mr. Jones presents is whether, given the 1993 Board Decision granting his claim for service-connected psychiatric disability based on new and material evidence, 38 C.F.R. § 20.1104 permits the Board to deny his claim of CUE on the basis that the 1962 RO Decision was subsumed by the 1993 Board Decision and an RO cannot review a Board decision. Mr. Jones asserts that the 1962 RO Decision was not subsumed by the 1993 Board Decision. He contends that the Court of Appeals for Veterans Claims therefore erroneously prohibited a collateral attack on an unappealed, final RO decision. Furthermore, Mr. Jones contends that the Court of Appeals for Veterans Claims "completely failed to reach the merits of [his] arguments" and instead affirmed the Board decision on a new and independent ground rather than the subsumption ground, which was the basis for the 1996 Board Decision.

The Secretary of the Department of Veterans Affairs (the "Secretary") responds that the Court of Appeals for Veterans Claims correctly concluded that, even if Mr. Jones' CUE claim had merit, he was precluded from requesting an RO to review the 1962 RO Decision because it had been subsumed by the 1993 Board Decision under *Dittrich* and *Donovan. See Dittrich,* 11 Vet.App. at 11–12; *Dono-*

---

Board). On November 21, 1997, Public Law 105–111 was enacted and, *inter alia,* added section 7111 to title 38 of the U.S. Code. Section 7111 supersedes the *Smith* holding by

providing that prior Board decisions are "subject to revisions on the grounds of [CUE]." 38 U.S.C. § 7111(a) (1999).

*van,* 10 Vet.App. at 407–08. The Secretary also notes that the Court of Appeals for Veterans Claims properly determined that there was no CUE in the 1962 RO Decision. Consequently, in the Secretary's view, the decision of the Court of Appeals for Veterans Claims must be affirmed if it is supported by either of these two independent and alternate grounds.

## DISCUSSION

### A. Standard of Review

Our review of decisions of the Court of Appeals for Veterans Claims is limited. Under 38 U.S.C. § 7292(c), we have the exclusive jurisdiction to "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under [section 7292], and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c) (1994). We have the authority to decide all relevant questions of law and can set aside a regulation or an interpretation of a regulation relied upon by the Court of Appeals for Veterans Claims when we find it to be arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or without observance of procedure required by law. *See* 38 U.S.C. § 7292(d)(1) (1994). Except to the extent that an appeal presents a constitutional issue, we may not review a challenge to a factual determination or a challenge to a law or regulation as applied to the facts of a particular case. *See* 38 U.S.C. § 7292(d)(2) (1994).

### B. Analysis

#### 1. Subsuming and the Doctrine of Delayed–Subsuming

■ Under the veterans benefits system, a veteran must bring his or her claim for disability benefits to the RO. If the RO denies the claim, the veteran must timely appeal the denial to the Board or else the RO decision becomes final. *See* 38 U.S.C. § 7105(c) (1994); 38 C.F.R. § 20.1103 (1999). As we have stated previously, "[b]asic principles of finality and res judicata apply to such agency decisions." *Routen v. West,* 142 F.3d 1434, 1437 (Fed. Cir.1998). A final and binding agency decision can only be reviewed in certain instances. For example, a veteran can collaterally attack a final RO decision based on CUE. *See* 38 U.S.C. §§ 5109A, 7111 (1999); *see also Bustos v. West,* 179 F.3d 1378, 1380–81 (Fed.Cir.1999). A veteran can also collaterally attack a final RO decision based on new and material evidence. *See* 38 U.S.C. § 5108 (1994); *see also Routen,* 142 F.3d at 1438 ("A second ground, again statutory, under which a previously closed case may be reopened is to present 'new and material evidence' sufficient to reopen the claim."). We have also held that an intervening change in the law may entitle a veteran to consideration of a previously closed RO decision. *See Spencer v. Brown,* 17 F.3d 368, 372 (Fed. Cir.1994). In addition, we have recently held that a veteran, under appropriate circumstances, can attack the finality of an unappealed RO decision by showing that such a decision was based on a breach of the statutory duty to assist. *See Hayre v. West,* 188 F.3d 1327, 1333–34 (Fed.Cir. 1999) (holding that when there is a breach of the duty to assist in which the VA failed to obtain pertinent service medical records specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency, the claim does not become final for purposes of appeal.).

■ When the veteran does, however, timely appeal the RO's denial to the Board and the Board affirms the initial decision, the veteran can collaterally attack only the Board decision, and not the initial RO decision. This is because the Board decision "subsumes" the RO decision under 38 C.F.R. § 20.1104, which provides that "[w]hen a determination by the [RO] is

affirmed by the [Board] such a determination is subsumed by the *final appellate decision.*" (emphasis added). This regulation provides that RO decisions are subsumed by Board decisions when they are directly appealed to the Board. On direct appeal, the Board is exercising its appellate powers and "affirming" the RO decision, thereby "subsuming" the RO decision. This interpretation of 38 C.F.R. § 20.1104 as only allowing for subsuming on direct appeal was also established in the jurisprudence of the Court of Appeals for Veterans Claims. *See Elkins v. Brown*, 8 Vet.App. 391, 396 (1995) (holding that CUE claim could not be raised as to RO decision because service connection for psychiatric disability was subject of subsuming Board decision on direct appeal); *Landicho v. Brown*, 7 Vet.App. 42, 52 (1994) (holding that RO denial of service connection could not be collaterally attacked because it was subsumed by Board decision on direct appeal).

In sum, when a veteran appeals an RO decision and such a decision is affirmed by the Board, the Board decision subsumes the RO decision. In such circumstances, the veteran can only collaterally attack the Board decision and not the RO decision, which has been subsumed. In addition, the veteran must file his or her collateral attack on the Board decision with the Board itself rather than the RO because a lower tribunal cannot review the decision of higher tribunal. *See Smith*, 35 F.3d at 1526.

Mr. Jones is therefore correct that 38 C.F.R. § 20.1104 does not provide for subsuming of final, unappealed RO decisions by subsequent Board decisions that consider the RO decision during collateral attacks. Thus, in this case, the 1993 Board Decision cannot have subsumed the 1962 RO Decision based on 38 C.F.R. § 20.1104. Our court, however, has recently introduced the concept of "delayed-subsuming," which is not based on 38 C.F.R. § 20.1104. *See Dittrich*, 163 F.3d 1349, 1353; *Donovan*, 158 F.3d at 1381–82. Un-

der the doctrine of delayed-subsuming, a Board decision that considers a collateral attack on a final, unappealed RO decision can also subsume that RO decision under certain circumstances, thereby preventing the veteran from collaterally attacking the final, unappealed RO decision by filing a claim with an RO. In other words, the doctrine of delayed-subsuming allows the Board to subsume final RO decisions that are not directly appealed to the Board, but rather are the subject of collateral attacks. In such instances, the veteran is required to collaterally attack the Board decision rather than the RO decision and to file this collateral attack with the Board rather than the RO.

### 2. *Donovan* and *Dittrich*

In *Donovan*, the RO denied the veteran's claim for gastric neurosis and psychoneurosis in 1947 and the veteran did not appeal this decision to the Board. In 1985, Mr. Donovan filed another claim for benefits, this time for Post Traumatic Stress Disorder. The RO denied his claim and he appealed to the Board, which denied the request in 1988 and noted that it had reviewed the entire evidence of record and was making a *de novo* determination of entitlement. In 1991, Mr. Donovan filed a claim for CUE with respect to the 1947 RO decision. Two new VA psychiatric examinations concluded that he had a stress disorder. Given this new and material evidence, the RO granted service connection for the stress disorder with payments effective as of 1991. Mr. Donovan requested that payments be made retroactive to 1947. The RO denied this request and Mr. Donovan appealed to the Board, which affirmed by holding that his claim that the 1947 RO decision contained CUE was without legal merit because the 1947 RO decision had been subsumed by the 1988 Board decision, which had reviewed the record *de novo*. The 1947 RO decision was therefore "immune from collateral attack under a theory of [CUE]." *Donovan*, 158 F.3d at 1380. The Court of Appeals

for Veterans Claims affirmed this application of the doctrine of delayed-subsuming. Our court also affirmed, holding that the 1988 Board decision implicitly made a determination that the 1947 decision did not include CUE. We held that the 1988 Board decision not only focused on whether the claim should be reopened but also determined the merits of the underlying question of service connection. We found the 1988 Board made a *de novo* review and essentially reviewed the 1947 decision as if the Board were acting in a direct appeal. The 1988 Board decision therefore "subsumed" the 1947 RO decision, rendering the initial RO denial immune from collateral attack. We explained that the 1988 Board decision had to bar Mr. Donovan's CUE claim because (1) it would place the RO in the improper position of reviewing an appellate tribunal and (2) the Board decision was final and could not be reopened on the same factual basis. *See* 38 U.S.C. §§ 7104(a), (b). Therefore, *Donovan* was our first case to hold that there could be a subsuming of an unappealed, final RO decision by a later Board decision even if the claim of CUE had not been raised or argued by the appellant to the Board—a "delayed-subsuming."

Subsequently, in *Dittrich,* the veteran submitted a request for service connection for a nervous condition with the RO in 1960. The RO denied this request and Mr. Dittrich did not timely appeal. He submitted new evidence after several years, which was treated as a request to reopen based on new and material evidence. The RO denied the claim to reopen and, on appeal, the Board reopened his claim in 1969 but denied it on the merits. Mr. Dittrich later submitted a claim for CUE in the 1960 RO decision. The RO held there was no CUE and, on appeal, the Board held that in its 1969 decision had effectively reviewed the 1960 RO decision and therefore "subsumed" it because the 1969 decision had reviewed the entirety of the evidence before the RO in 1960 in addition to the new and material evidence. We therefore held that the RO could not

review the Board's 1969 decision, though Mr. Dittrich could collaterally attack the 1969 decision by bringing a claim for CUE at the Board level. Consequently, in *Dittrich* we reaffirmed the doctrine of delayed-subsuming.

■ Mr. Jones' case falls squarely within the parameters of our precedent regarding delayed-subsuming. The 1993 Board Decision reviewed *de novo* the entirety of the evidence before the RO in 1962 and determined the merits of the underlying question of service connection. The 1993 Board Decision, under *Dittrich* and *Donovan,* therefore "subsumed" the 1962 RO Decision, rendering this unappealed, final RO decision immune from a CUE attack. We therefore affirm the decision of the Court of Appeals for Veterans Claims with respect to the applicability of the doctrine of delayed-subsuming to this case. We note, however, that our decision today does not preclude Mr. Jones from filing a claim of CUE as to the 1993 Board Decision directly to the Board. *See* 38 U.S.C. § 7111 (1994).

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals for Veterans Claims is

*AFFIRMED.*

## COSTS

Each party shall bear its own costs.

GAJARSA, Circuit Judge, additional views.

I write separately to note one further point concerning the lower court's decision. In the instant case, the issue before the Court of Appeals for Veterans Claims was whether the 1996 Board denial of Mr. Jones' claim of CUE as a matter of law was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A) (1994). The 1996 Board Decision did not

determine, based on the evidence, whether there was CUE in the 1962 RO Decision. Instead, the 1996 Board's finding that the 1993 Board Decision subsumed the 1962 RO Decision provided the complete legal predicate for the conclusion that Mr. Jones' claim of CUE was legally insufficient. In short, there was no Board decision for the Court of Appeals for Veterans Claims to review concerning the absence of CUE in the 1962 RO Decision on the merits. It was therefore legal error for the Court of Appeals for Veterans Claims to examine the record *de novo* and determine for the first time on appeal that there was no CUE based on the evidence in the 1962 RO Decision.

I also wish to discuss the merits of this court's espousal of the doctrine of delayed-subsuming. Unlike subsuming, which is grounded in 38 C.F.R. § 20.1104, the doctrine of delayed-subsuming is not provided for in any statute or regulatory provision. It is a creature of judicial invention that lacks both legal and policy justification.

In the case at bar, Mr. Jones did not appeal the 1962 RO Decision, which rendered this decision final and accordingly not subject to subsuming under 38 C.F.R. § 20.1104. Mr. Jones then reapplied for service connection many years later. The 1993 Board Decision granted him service connection based on new and material evidence. In rendering this decision, the Board stated it was reviewing the entire record *de novo*. *Donovan* explains that in conducting such a review, the Board is essentially reviewing the RO decision as if on direct appeal and therefore it subsumes the initial RO decision. *See Donovan*, 158 F.3d at 1381–82. *Donovan* further explains that, when the Board *sua sponte* reviews an RO decision "*de novo*" and finds no "error," it has essentially deter-

mined that no CUE in any form exists in the RO decision. In effect, this doctrine of delayed-subsuming allows to the Board to act as if it is hearing a case on direct appeal (which it is not) and act as if it is hearing a collateral attack regarding CUE (when it is hearing a collateral attack based on new and material evidence).[1]

This legal fiction stands firmly grounded in quicksand. The Board, of course, cannot "act" as if it is hearing a direct appeal when it is hearing a collateral attack. Allowing delayed subsumption vitiates the finality of the unappealed RO decision as set forth in 38 U.S.C. § 7105(c) and 38 C.F.R. § 20.1103. When an unappealed RO decision becomes final, it cannot be reviewed on the merits *de novo* under the current statutory and regulatory scheme; it can only be reviewed during a collateral attack. In addition, when a collateral attack is brought with respect to new and material evidence, the Board cannot *sua sponte* transform that attack into a CUE attack. By allowing for delayed-subsuming in this case, we are assuming the 1993 Board conducted a CUE analysis even though Mr. Jones raised no CUE arguments and the Board did not discuss CUE in its decision. In addition, we are assuming the Board considered *all possible* CUE arguments that Mr. Jones could ever think of raising and therefore all of his future CUE arguments are precluded with respect to the RO decision. In effect, our jurisprudence of delayed-subsuming allows for a Board to *sua sponte* decide to review the entire record *de novo* and consider all possible CUE claims without any argument by or notice to the veteran. Obviously, such a jurisprudence rests on baseless assumptions and fictions and therefore results in a keen injustice to the veteran who is supposed to be litigating his claim

1. For example, the *Donovan* court stated that it agreed that the Board decision " 'denying service connection was not limited to the question of whether a claim should be reopened [i.e., a collateral attack], but extended to an analysis of the merits of the underlying question of service connection [i.e., a direct appeal of the original claim].' " *Donovan,* 158 F.3d at 1381. The court further noted that "[a]lthough the 1988 Board decision did not use the words 'clear and unmistakable error,' we conclude that the Board determined that no such error infected the 1947 [RO's] decision." *Id.*

in a uniquely pro-claimant system. The doctrine of delayed-subsuming places the interests of the veteran in considerable jeopardy by tampering with his or her right to judicial review with regard to CUE claims.

This abrogation of claimant rights is unwarranted not only as a matter of statutory, regulatory, and policy analysis but also with respect to case law that has resisted prior attempts by the Secretary to thwart rights to judicial review. The Court of Appeals for Veterans Claims has held that the Board cannot refuse to rule on a claim properly appealed to it and thereby deny to a claimant a Board decision that can then be appealed to the Court of Appeals for Veterans Claims. *See EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991).

On the other side of the coin, the Court has also noted that "where ... the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor the Board has authority to adjudicate those specific claims, absent a subsequent request or authorization from the claimant or his or her representative." *Hamilton v. Brown,* 4 Vet.App. 528, 544 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed. Cir.1994). The Court of Appeals for Veterans Claims stressed:

> A contrary result would permit the RO or Board to act in a way that could prejudice a claimant's enjoyment of statutory and regulatory procedural rights (such as a detailed [statement of the case] under section 7105(d)) by deciding a claim on a record that had not been adequately developed.

*Id.* (citations omitted). Moreover, in *Sutton v. Brown,* 9 Vet.App. 553, 564 (1996) (citing *Bernard v. Brown,* 4 Vet.App. 384, 393–94 (1993)), the Court of Appeals for Veterans Claims stated:

> [W]hen the Board addresses in its decision a question that has not been addressed by the RO, it must consider (1) whether the claimant has been given

both adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and to address that question at a hearing, and (2) whether, if such notice has not been provided, the claimant has been prejudiced thereby.

*See also Curry v. Brown,* 7 Vet.App. 59, 66–67 (1994). As a general matter, *Sutton* and *Bernard* stand for the proposition that the Board should not consider issues not considered by the RO decision on appeal to it and if the Board does so it should do so only with the full and informed participation of the veteran.

When a Board reviews a request to reopen a claim for new and material evidence, it must necessarily review all of the evidence in the record to determine if the veteran has presented "new and material evidence." *See Hodge v. West,* 155 F.3d 1356, 1363 (Fed.Cir.1998). This analysis, however, does not require—or allow—the Board to both (1) consider all possible CUE arguments *sua sponte* and (2) act as if it is on direct appeal and subsume the original RO denial. There is no reason for the Board to *sua sponte* consider CUE when the only issue before it regards new and material evidence. An award or denial of benefits based on new and material evidence does not determine the presence or absence of CUE in the initial, unappealed RO decision. If new and material evidence and CUE attacks required the tribunal to conduct the same analysis, then presumably Congress or the Secretary would require the veteran to bring all collateral attacks together. The current statutory and regulatory scheme does not require the veteran to bring all possible collateral attacks at the same time and we should not allow the Board to essentially force the veteran to bring all collateral attacks at once. Administrative adjudication of rights without the veteran's full and fair participation results in a fundamental unfairness to the veteran and an

impermissible abrogation of the right to judicial review.

Moreover, the concerns justifying the doctrine of delayed-subsuming as set forth in *Dittrich* and *Donovan* are illusory. These opinions are concerned that (1) the RO would be reviewing a Board decision if the CUE claim were brought at the RO level with respect to the original RO denial[2] and (2) the finality of Board decisions would therefore be vitiated.[3] These concerns, however, disappear once we acknowledge what the Board has properly adjudicated and what the Board has not adjudicated. For example, in Mr. Jones' case, once we dismiss the faulty assumption that the 1993 Board was capable of considering all possible CUE arguments, then we do not have the problem of a lower tribunal (RO) reviewing the final decision of higher tribunal (Board) on the same CUE issue because CUE was not before the 1993 Board. If we acknowledge that the 1993 Board only had the issue of new and material evidence before it, then Mr. Jones can bring his CUE claim because it was not litigated before the Board. If we adhere to the statutory and regulatory scheme, then we must acknowledge that the unappealed RO decision is final and can only be reviewed for collateral attacks and not subsumed as if on a fictional direct appeal. If Mr. Jones wins on his claim that there was CUE in the 1962 RO Decision, this would not be inconsistent with his award of service connection in 1993 when he presented new and material evidence. Even if Mr. Jones had not been awarded service connection in 1993 under the new and material evidence standard, that would not be inconsistent with a finding of CUE in the 1962 RO Decision under the CUE standard.

In sum, our court should seriously reconsider *in banc* the adoption of the delayed-subsuming doctrine. This doctrine has no basis in statute or regulation. It rests on baseless assumptions and legal fictions. It does not help promote the policies underlying the veterans' pro-claimant system. Given these features, the doctrine should be put to rest rather than given continued vitality by our court.

**2.** For example, *Donovan* justified the doctrine of delayed-subsuming on the basis that "if the [RO] were now to attempt to decide that question *de novo*, it would be reviewing a decision of the appellate tribunal that customarily reviews decision of the regional office." *Donovan,* 158 F.3d at 1382. Similarly, *Dittrich* stated that the veteran was improperly requesting that "the [RO] collaterally review the Board's ... decision." *Dittrich,* 163 F.3d at 1353.

**3.** *Donovan*'s second justification for the doctrine of delayed-subsuming was that "the governing statute makes Board decisions 'final,'" and a claim may not be thereafter reopened and allowed on the same factual basis. *Donovan,* 158 F.3d at 1382. Similarly, *Dittrich* also focused on the finality of Board decisions, acknowledging that "[a]fter the Board has denied a claim for benefits, a[n][RO] ... cannot thereafter consider or grant a claim upon the same factual basis." *Dittrich,* 163 F.3d. at 1351.